UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-62275-CIV-LENARD/GOODMAN

**CRAIG APPLEMAN, individually
and on behalf of others similarly situated,**

    Plaintiffs,

**v.**

**DS SERVICES OF AMERICA, INC.,**

    Defendant.
_____/

## ORDER DENYING UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT (D.E. 67) WITHOUT PREJUDICE

**THIS CAUSE** is before the Court on Plaintiff Craig Appleman's Unopposed Motion to Approve Settlement Agreement (the "Motion," D.E. 67), seeking approval of the parties' Settlement Agreement, Release & Waiver (the "Agreement," D.E. 68-1) in this purported collective action under the Fair Labor Standards Act ("FLSA"). Upon consideration of the Motion, the Agreement, the entire case file, and the applicable law, the Motion is DENIED without prejudice for the reasons set forth herein.

**I.   Background**

On October 3, 2014, Plaintiff, a former Costco Sales Representative, filed his Complaint on behalf of himself and others similarly situated seeking back-pay for unpaid overtime. (D.E. 1.) On November 24, 2014, opt-in plaintiff William Ortiz joined the suit. (D.E. 24.) On January 1, 2015, another opt-in plaintiff, Candy Gumaer, joined the suit. (D.E. 44.) Thereafter, the parties engaged in settlement negotiations and agreed to

the terms set forth in the Agreement, attempting to resolve the matter as to the entire purported class. Plaintiff Appleman filed the instant Motion seeking this Court's approval of the Agreement prior to dismissal of the case. All terms of the Agreement are dependent upon the Court's approval of the entire Agreement. (Agreement, § 2(a).) In short, the Agreement attempts to settle this case as to the three Plaintiffs joined in this suit, as well as to a proposed class—over 300 people (D.E. 68 at 2)—that will be given a post-settlement notice of their right to opt-in to the Agreement by cashing a check mailed to them by the administrator. See (id. §§ 3, 8, 9.) The proposed class is defined as "all individuals employed by [Defendant] DS Services of America, Inc. from October 3, 2012 to the date of Approval (the "Class Period") who worked as Costco Sales Representatives . . . at any time during the Class Period." (Id. § 3.)

## II.   Standard

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1352 (11th Cir. 1982) (citing Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728 (1981)). "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine, 450 U.S. at 740 (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945)).

In relation to the resolution of a worker's rights under the FLSA, the Eleventh Circuit Court of Appeals has held as follows:

> Other than a [29 U.S.C. §] 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resulution [sic] of a bona fide dispute over FLSA provisions.

Lynn's Food Stores, 679 F.2d at 1355 (internal quotation marks omitted).

The issue here is that the parties have attempted to resolve the rights of over 300 potential opt-in plaintiffs without those potential plaintiffs being joined in this action or being able to object to the terms of the Agreement. Seemingly, the parties have attempted to resolve their case as if it were a Federal Rule of Civil Procedure 23 "class action," not an FLSA "collective action." Though some considerations overlap between the two types of cases, the material difference between class actions and collective actions is the primary reason that the Agreement cannot be approved at this time. See Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1247–49 (11th Cir. 2003) (distinguishing between Rule 23 class actions and FLSA collective actions).

Section 216(b) of the FLSA expressly states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). This language creates an opt-in right in FLSA collective actions, as opposed to an opt-out right that is used in class-action cases. See Cameron-Grant, 347 F.3d at 1248; see also Parrilla v. Allcom Constr. & Installation Servs., LLC, 688 F. Supp. 2d 1347, 1351 (M.D. Fla. 2010) (stating that "collective actions are unique (if not antiquated) in that, unlike Rule 23's opt-out provisions, no person can become a party plaintiff unless he

affirmatively "opts in" by filing his written consent").  Binding Eleventh Circuit precedent provides the following guidance:

> In light of the history underlying the amendments to the FLSA, it is not surprising that § 216(b) is a fundamentally different creature than the Rule 23 class action. Even if the § 216(b) plaintiff can demonstrate that there are other plaintiffs similarly situated to him, see 29 U.S.C. § 216(b), he has no right to represent them. Under § 216(b), the action does not become a "collective" action unless other plaintiffs affirmatively opt into the class by giving written and filed consent. Until such consent is given, no person will be bound by or may benefit from judgment. Thus, in contrast to Rule 23 class actions, the existence of a collective action under § 216(b) does depend on the active participation of other plaintiffs. In other words, under § 216(b), the named plaintiff does not have the right to act in a role analogous to the private attorney general concept.

Cameron-Grant, 347 F.3d at 1249 (citations and internal quotation marks omitted). In sum, class-wide settlements are not possible in an FLSA collective action unless the entire class has opted-in to the lawsuit.

Here, the Agreement does provide for an opt-in procedure; however, the timing of the procedure runs afoul of the FLSA.  Specifically, the Agreement states that <u>after</u> approval of the settlement by this Court, an administrator will send out checks to the proposed class (which the parties also seek to have certified via their Motion to Approve), and then the proposed class members can opt-in to the Agreement by cashing the check. (D.E. 68-1 at §§ 8(c) & 9(c).) Any unclaimed checks will be canceled after a specified period of time, and any unpaid funds would be returned to Defendant.[1]  (D.E.

---

[1] This procedure also casts doubt onto the reasonableness of the requested attorney's fees—approximately $200,000—because the fees are alleged to be reasonable in light of the entire settlement amount of $700,000. If, hypothetically, only a small number of the purported class ultimately opt-in, Plaintiff's counsel could secure fees that constitute an unreasonable

68-1 at § 9(d).) This type of post-settlement opt-in procedure has been rejected by district courts relying on Cameron-Grant. E.g., Perez v. Avatar Props., Inc., No. 6:07-cv-792-Orl-28DAB, 2008 WL 4853642 (M.D. Fla. Nov. 6, 2008) (order adopting report and recommendation, denying post-settlement opt-in procedure, and citing Cameron-Grant, 347 F.3d 1240); accord Leigh v. Bottling Grp., LLC, No. DKC-10-0218, 2011 WL 1231161 (D. Md. Mar. 29, 2011).

Based on the unique nature of FLSA collective actions, if the parties seek to resolve the collective action by settlement, they should first seek conditional approval of the proposed class and proffer an adequate notice procedure to allow potential plaintiffs to opt-in to this case. Only then may they seek to resolve the rights of the greater class of workers by settlement. Therefore, the Court cannot approve the Agreement as presented at this time.

### III. Conclusion

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion to Approve Settlement Agreement (D.E. 68) is **DENIED** without prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of August, 2015.

*[signature]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT**

---

proportion of the actual settlement fund. This potential outcome highlights the propriety of requiring potential plaintiffs to opt-in prior to settling their claims.

5